# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

KANDIE GILLILAND,

   *Plaintiff,*

vs.

CHARLES CHANEY III,

   *Defendant.*

Case No. 15-1231-EFM-KGG

## MEMORANDUM AND ORDER

  Plaintiff Kandie Gilliland filed this lawsuit under 42 U.S.C. § 1983 alleging that Defendant Charles Chaney III violated her Eighth Amendment rights while she was incarcerated at Butler County Correctional Facility. This matter comes before the Court on Chaney's Motion for Summary Judgment (Doc. 32). Chaney argues that he is entitled to summary judgment because the uncontroverted facts show that he and Gilliland engaged in consensual sexual intercourse while he was working as a guard at the prison. The Court, however, finds that there is a genuine issue of material fact regarding Gilliland's consent. Chaney's motion is therefore denied.

## I. Factual and Procedural Background[1]

Gilliland was an inmate at Butler County Correctional Facility ("BCCF") where Chaney worked as a prison guard. According to Gilliland, inmates at BCCF commonly discussed the prison guards and what they thought of them. Gilliland and fellow inmate, Angela Cole, had multiple conversations about prison guards that they thought were attractive.

One to two weeks after Gilliland began serving her sentence at BCCF, Gilliland began conversing with Chaney. During one of these conversations, Chaney told her that "he knows . . . somebody that thinks [she's] cute." On or about January 6, 2013, Gilliland suffered a seizure and was moved to the infirmary. A few days later, Chaney approached Gilliland in her medical cell and asked her if she knew the person who thought she was cute yet. That evening, Chaney spoke to Gilliland again and implied that he was the person who thought she was cute. Gilliland did not report any of these conversations to anyone at the jail or fill out a grievance form regarding them.

Gilliland's next interaction with Chaney occurred when he gave her a pad box with a note in it. Gilliland does not recall what the note said, but she remembers being flattered by Chaney's attention. She wrote a letter back to Chaney but does not recall the contents of the letter. When Gilliland gave her note to Chaney, she asked him if she could take a shower. He responded that he would see what he could do but that the guards were busy that evening. Gilliland was not taken to the shower that evening. The next evening, Chaney gave Gilliland another pad box with a note in it. Gilliland does not remember the contents of the note, and she did not respond to it.

---

[1] In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts, and they are related in the light most favorable to the non-moving party.

Again, Gilliland did not report these interactions with Chaney to anyone in the jail or fill out a grievance form regarding them.

Gilliland and Chaney's next interaction was on January 14, 2013, when he brought her another note that discussed sexual acts between them. The note made Gilliland feel "sick." Later that evening, when Chaney was making his rounds, Gilliland asked Chaney if she could take a shower. The two did not discuss Chaney's note at this time. While Chaney was escorting Gilliland to the shower, he brushed his crotch up against her. Chaney could see part of Gilliland's body while she showered, and he watched her for a couple minutes. Chaney then walked away and returned after Gilliland was dressed.

After Gilliland returned to her cell, she asked Chaney for new library books. Normally, the guards go and get the books from the library and bring them to the inmates, but Chaney told Gilliland that she could come with him to the library. Before they left, Chaney asked Gilliland to change into her two-piece uniform. Gilliland was excited to go to the library and pick out her own books, and she willingly went to library with Chaney.

As Gilliland was looking at the books, Chaney told her that she looked good in the shower. Chaney told her that he wanted to kiss her and see her breasts. Gilliland just looked at him in response, so he repeated the request. Gilliland responded by raising her shirt and exposing her breasts. Chaney then kissed her, and while he was kissing her, he raised her shirt and then kissed her breasts. Chaney then turned Gilliland around by the waist and told her that he wanted to "f[***] her," and told her to pull her pants down. Chaney and Gilliland engaged in sexual intercourse, during which Chaney told her to get to her knees. He put his penis in her mouth and ejaculated in it.

Gilliland never told Chaney "no" up to and during the time that she and Chaney engaged in sexual intercourse. Gilliland testified, however, that she felt that she couldn't leave the library at the time of the incident because Chaney was standing in the doorway. She also claims that she had no choice but to comply with Chaney's orders while at the library because he was an authority figure to whom she could not say "no."

Gilliland did not report the incident upon returning to her cell the night of January 14 because she was scared. She ultimately reported it three days later, on January 17, 2013. During the investigation of the incident, Gilliland reported to the interviewing detectives that Chaney did not rape her. She later testified, however, that to her, the term "rape" meant the victim must be held down by the agressor.

On July 28, 2015, Gilliland filed a civil rights Complaint under 42 U.S.C. § 1983 alleging a violation of her Eighth Amendment rights. Gilliland originally brought her claim against Chaney, the Butler County Sherriff, and BCCF's Detention Captain, but now, only Chaney remains. Chaney has filed a motion for summary judgment on Gilliland's claim, and Gilliland has responded. The motion is therefore ripe for the Court's consideration.

## II.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[2] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[3] The movant bears the initial burden of proof, and must show the lack of evidence on an essential

---

[2] Fed. R. Civ. P. 56(c).

[3] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

element of the claim.[4]  If the movant carries this initial burden, the nonmovant that bears the burden of persuasion at trial may not simply rest on its pleading but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[5]  These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[6]  The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[7]

### III.   Analysis

The Eighth Amendment states:  "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."[8]  The sexual abuse of a prisoner by a prison guard violates the Eighth Amendment.[9]  The Tenth Circuit generally analyzes the alleged sexual abuse of a prisoner as an excessive-force claim.[10]  To sustain such a claim, the prisoner must show some form of coercion by the prisoner's custodians.[11]  "[W]hen a prisoner alleges rape by a prison guard, the prisoner need prove only that the guard forced sex in order to show an

---

[4] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[5] *Id.* (citing Fed. R. Civ. P. 56(e)).

[6] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[7] *LifeWise Master Funding*, 374 F.3d at 927.

[8] U.S. Const. amend. VIII.

[9] *Graham v. Sheriff of Logan Cnty.*, 741 F.3d 1118, 1122 (10th Cir. 2013).

[10] *Id.* at 1123.

[11] *Id.* at 1126.

Eighth Amendment violation."[12]  If such force cannot be shown, then there is no Eighth Amendment violation.[13]  In other words, consent to sexual intercourse is a complete defense to an excessive-force claim.[14]  The issue of consent, however, must be carefully examined because "the power dynamics between prisoners and guards make it difficult to discern consent from coercion."[15]

Chaney's single argument as to why he is entitled to summary judgment is that Gilliland consented to have sex with him and there is no genuine issue of material fact about that consent. According to Chaney, the facts of this case are "remarkably similar" to those from a fairly recent Tenth Circuit decision, *Graham v. Sherriff of Logan County*.[16]  In that case, an inmate brought a § 1983 claim against two prison guards with whom she engaged in sexual intercourse while in solitary confinement in Logan County jail in Oklahoma.[17]  The plaintiff claimed, as Gilliland does here, that the guards violated her Eighth Amendment rights.[18]  Initially, the plaintiff reported that the sexual conduct was consensual.[19]  She later recanted during the prison's investigation, stating that her sexual acts were only consensual with one guard and that she did

---

[12] *Id*. at 1123.

[13] *See id*. at 1123 (granting summary judgment on the plaintiff's Eighth Amendment claim "because there is no genuine dispute that [the defendants] did not force [the plaintiff] to have sex, making all other issues irrelevant.").

[14] *See id*. at 1126.

[15] *Id*. (citation omitted).

[16] 741 F.3d 1118.

[17] *Id*. at 1120.

[18] *Id*.

[19] *Id*. at 1122.

not want the other one there.[20] She also testified in her deposition that she thought what happened was wrong and that she would not have had the same concerns about the sexual acts if she was free.[21] The district court granted summary judgment for the defendants, and the Tenth Circuit affirmed concluding that "there is no genuine dispute that [the guards] did not force [the plaintiff] to have sex, making all other issues irrelevant."[22]

The Tenth Circuit based its decision on the "overwhelming evidence" showing that the plaintiff consented to sexual intercourse with the guards.[23] The plaintiff had participated in sexual conversations with one of the defendants before the incident.[24] She also flashed that defendant and wrote him notes making it clear that she wanted to have sex with him.[25] She spoke with the other defendant about her fantasies and told him to bring the other guard so they could have a threesome.[26] She admitted that she allowed one of the defendants to look at her naked and that doing so made her feel wanted and appreciated.[27] The plaintiff also did not say anything when the guards entered her cell, removed her clothing, or touched her.[28]

Contrary to Chaney's assertion, Gilliland's conduct in this case is not "remarkably similar" to the plaintiff's conduct in *Graham*. Unlike the plaintiff in *Graham*, Gilliland did not

---

[20] *Id*.

[21] *Id*.

[22] *Id*. at 1123.

[23] *Id*. at 1124.

[24] *Id*. at 1120-21.

[25] *Id*. at 1121.

[26] *Id*.

[27] *Id*.

[28] *Id*.

initiate the relationship between her and Chaney and did not invite the sexual conduct. Chaney initiated the flirtations between the two when he approached Gilliland in her medical cell to tell her that he knew someone who thought she was cute. He initiated the note passing and wrote Gilliland a sexually explicit note. Chaney also initiated sexual contact with Gilliland by pressing his crotch against her while escorting her to the shower.

This case also differs from *Graham* in that Gilliland was the first person to report the sexual intercourse to the prison authorities. In *Graham*, another prisoner told the authorities something was going on between Graham and the guards, whereas here, Gilliland came forward on her own volition. Chaney takes issue with the fact that Gilliland originally told the authorities that he did not rape her. But, Gilliland later clarified this statement during her deposition, testifying that she thought the definition of rape required the victim to be held down during intercourse.

Furthermore, there is another aspect of the *Graham* decision that the Court finds significant to this case. During the sexual encounter in *Graham*, one of the guards dropped his radio causing the plaintiff to partially stand up.[29] The guard, however, pushed her head back toward the other guard, saying "[b]end over, bitch" and "shhh."[30] The Tenth Circuit stated that it did not consider this fact on appeal because the plaintiff did not reference it in the argument section of her brief.[31] But, if the plaintiff had referenced this fact, the circuit might otherwise have ordered a partial reversal and remand.[32]

---

[29] *Id*.

[30] *Id*.

[31] *Id*. at 1123-24.

[32] *Id*. at 1124.

At least one other judge in the District of Kansas has referenced this caveat when analyzing the issue of consent in a prisoner sexual abuse case. In *Keith v. Koerner*,[33] the prisoner plaintiff alleged a violation of her Eighth Amendment rights after she had sexual intercourse with a prison guard.[34] The summary judgment facts showed that the plaintiff consented to oral sex with the guard but not sexual intercourse.[35] While the plaintiff was performing oral sex, the guard started to remove the plaintiff's pants and she said that she didn't think that was a good idea.[36] The guard silenced the plaintiff by kissing her.[37] He then turned her around, told her to get on her knees, and penetrated her.[38] Judge Crabtree found that a reasonable jury might conclude from those facts that the plaintiff did not consent to sexual intercourse.[39] Specifically, the court found that the plaintiff "manifested her reluctance to have sex more clearly than [] the *Graham* plaintiff," by saying that she did not think it was a good idea.[40] The court also referenced the fact that the guard's action of shushing the plaintiff and having sexual intercourse with her was similar to that of the guard in *Graham* who pushed the plaintiff's head down.[41]

Although *Keith* is neither completely analogous to this case nor binding on this Court, it is instructive because of its application of *Graham*. In light of those decisions, the Court

---

[33] 2015 WL 4920283 (D. Kan. Aug. 18, 2015), *rev'd on other grounds*, 843 F.3d 833 (10th Cir. 2016).

[34] *Id*. at *1.

[35] *Id*. at *6.

[36] *Id*.

[37] *Id*.

[38] *Id*.

[39] *Id*.

[40] *Id*.

[41] *Id*.

concludes that Chaney's conduct in this case also presents a genuine issue of material fact regarding Gilliland's consent. The record shows that Chaney blocked the doorway to the library to prevent Gilliland from leaving. While kissing Gilliland, he grabbed her waist, turned her around, and told her to pull down her pants. He also placed his penis in her mouth and ejaculated in it. This conduct is similar enough to the guard's conduct in *Graham* that a reasonable jury may find that Gilliland did not consent to sexual intercourse with Chaney.

Distinguishing consent from coercion is difficult in this case because of the power differential between Chaney and Gilliland.[42] While the Tenth Circuit found "overwhelming evidence" of consent in *Graham*, the record in this case does not contain such evidence. Rather, the record shows a genuine issue of material fact regarding whether Gilliland consented to sexual intercourse with Chaney. Therefore, Chaney's motion for summary judgment is denied.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 32) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 15th day of March, 2017.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[42] *See Graham*, 741 F.3d at 1120, 1126.